1
2
3
4
5                        UNITED STATES DISTRICT COURT
6                          EASTERN DISTRICT OF CALIFORNIA
7
8    JESUS JOSE MACIAS,                    )    1:09-CV-00923 DLB HC
                                           )
9                    Petitioner,           )    ORDER DENYING PETITION FOR WRIT
                                           )    OF HABEAS CORPUS
10        v.                               )
                                           )    ORDER DIRECTING CLERK OF THE
11   JAMES HARTLEY,                        )    COURT TO ENTER JUDGMENT
                                           )
12                   Respondent.           )    ORDER DENYING CERTIFICATE OF
     _____)    APPEALABILITY
13
14        Jesus Jose Macias (hereinafter "Petitioner") is a state prisoner proceeding pro se with a

15   petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

16                                    **Procedural History**

17        Petitioner is currently in the custody of the California Department of Corrections and

18   Rehabilitation pursuant to a judgment of the Kings County Superior Court.  A jury found Petitioner

19   guilty of two counts of lewd or lascivious acts against a child under the age of 14 years (Cal.Penal

20   Code § 288 (a); Counts I and II).[1]  Petitioner also admitted a prior strike allegation which subjected

21   him to a five-year enhancement under § 667.51.  The trial court imposed a sentence of 17 years,

22   consisting of 12 years for Count I, (the six-year middle term doubled pursuant to California's three

23   strike law) plus the additional five year prior strike enhancement.  The court also sentenced

24   Petitioner to a 12 year concurrent term for Count II.

25        On August 4, 2008, in its opinion following Petitioner's direct appeal, the California Court of

26   Appeal affirmed the judgment.  See Respondent ("Resp't") Lodged Doc 4.  Petitioner filed a petition

27

28        _____
               [1]Unless otherwise indicated, all statutory references are to the California Penal Code.

1   for review in the California Supreme Court on August 18, 2008.  See Resp't Lodged 5.  The

2   California Supreme Court denied the petition for review on October 16, 2008.  See Resp't Lodged 6.

3        On May 28, 2009, Petitioner filed a habeas petition in the California Supreme Court, (See

4   Resp't Lodged Doc. 7) which the court denied on October 14, 2009.[2]

5        On May 27, 2009, Petitioner filed the instant federal petition for writ of habeas corpus.  See

6   Doc. No. 1.  On June 23, 2009, Petitioner filed a supplemental federal petition for writ of habeas

7   corpus.  See Doc. No. 5.  On February 4, 2010, Respondent filed an answer to the petition.  See Doc.

8   No. 16.  On, June 9, 2010, Petitioner filed a traverse.  See Doc. 24.  The parties have consented to

9   Magistrate Jurisdiction.  See Doc. Nos. 3, 11.

10                         **Factual Background[3]**

11       The Court adopts the California Court of Appeal's summation of the facts surrounding

12  Petitioner's crime and conviction:

13       **Prosecution Case**

14       On December 3, 2005, [Petitioner] babysat five-year-old J.L. and 14-month-old D.J.
         at their home in Lemoore while the children's mother, M.J., and M.J.'s husband went
15       to a Christmas party.  [Petitioner's] fiancé at the time, S.E., is M.J.'s sister.

16       M.J. and her husband returned home at approximately 8:00 p.m., and M.J. drove
         [Petitioner] home.  When M.J. returned home, she found that pornographic pictures
17       had been downloaded to her computer while she and her husband were at the
         Christmas party.
18
19       M.J. telephoned her sister, who then asked [Petitioner] if he had been viewing
         pornography on M.J.'s computer.  [Petitioner] admitted that he had. The next
         morning, M.J. questioned J.L. who stated, "[Petitioner] touched my pee pee." J.L.'s
20       name for penis at that time was "pee pee."

21       At that point, M.J. telephoned S.E. and told her what J.L. had said. S.E. then asked
         [Petitioner] if the accusation was true.  After initially denying it, [Petitioner] admitted
22       he touched the boy's penis.  He cried and said he was sorry, he had a problem and he
         needed help.
23

24       [2]The Court takes judicial notice of the California Supreme Court's docket in Macias (Jesus Jose) on Habeas Corpus,
     case number S173171, available on the California courts' website at http://appellatecases.courtinfo.ca.gov, (Macias (Jesus
25   Jose) on Habeas Corpus, No. F173171 (Cal. October 14, 2009)).  See Mir v. Little Company of Mary Hosp., 844 F.2d 646,
     649 (9th Cir. 1988) (court may take judicial notice of court records).
26
27       [3]These facts are derived from the California Court of Appeal's opinion issued on August 4, 2008.  See Resp't Lodged
     Doc. 4.  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is
28   presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1);
     see Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004); Moses v. Payne, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

Later that day, [Petitioner] told S.E. the following.  He was masturbating while viewing pornography on the computer when J.L. walked in the room and asked [Petitioner] what he was doing.  At that point, [Petitioner] pulled down J.L.'s pants and touched the boy's penis.

Robin Hayes, a special agent with the Naval Criminal Investigative Service ["NCIS"] questioned [Petitioner].  After initially denying the accusation that he had sexually molested J.L.,  [Petitioner] stated, "I did it." He stated he touched J.L. over his pants on his penis, and then put his hands inside J.L.'s pants and masturbated him for 20 to 30 seconds.

In 2000 [Petitioner] was convicted of unlawful sexual intercourse with an incompetent person (Pen.Code, § 261, subd. (a)(1)).  On cross-examination, he testified that the victim in that case was "mentally impaired," and, although she was an adult and 13 years older than [Petitioner], she had the mental capacity of an eight-to-ten-year-old person.

**Defense Case**

[Petitioner] testified to the following.  He did not sexually molest J.L. nor did he tell S.E. that he did.  He falsely admitted to Special Agent Hayes that he sexually molested J.L. because she told him she "could help [him] out, get less time, make things easier," and by the time she questioned him it had been "almost two weeks since the accusation," and he was "sick, be it physically and mentally, and [he] was scared. . . ."

See Resp't Lodged Doc 4 at 1.

## Discussion

### I.   Jurisdiction and Venue

A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States district courts if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, n.7 (2000).  Venue for a habeas corpus petition challenging a conviction is proper in the judicial district in which the petitioner was convicted.  28 U.S.C. § 2241(d).

As Petitioner asserts that he is in custody pursuant to a State conviction which violated his rights under the United States Constitution, the Court has jurisdiction over this action.  28 U.S.C. § 2254(a).  Petitioner was convicted in Kings County, California, which is within the Eastern District of California, and thus venue is proper in the Eastern District.  28 U.S.C. § 84; 28 U.S.C. § 2241(d).

### II.   Standard of Review

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of

1   1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's

2   enactment.  Lindh v. Murphy, 521 U.S. 320, 326-27 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499

3   (9th Cir. 1997).  The instant petition was filed after the enactment of AEDPA and is consequently

4   governed by its provisions.  See Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Thus, the petition

5   "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was

6   'contrary to, or involved an unreasonable application of, clearly established Federal law, as

7   determined by the Supreme Court of the United States.'"  Irons v. Carey, 505 F.3d 846, 850 (9th Cir.

8   2007) (quoting 28 U.S.C. § 2254(d)(1)), overruled in part on other grounds, Hayward v. Marshall,

9   603 F.3d 546, 555 (9th Cir. 2010) (en banc); see Lockyer, 538 U.S. at 70-71.

10          Title 28 of the United States Code, section 2254 remains the exclusive vehicle for

11  Petitioner's habeas petition as Petitioner is in the custody of the California Department of

12  Corrections and Rehabilitation pursuant to a state court judgment.  See Sass v. California Board of

13  Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006) overruled in part on other grounds, Hayward,

14  603 F.3d at 555.  As a threshold matter, this Court must "first decide what constitutes 'clearly

15  established Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538

16  U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal

17  law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's]

18  decisions as of the time of the relevant state-court decision."  Id. (quoting Williams, 529 U.S. at

19  412).  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal

20  principle or principles set forth by the Supreme Court at the time the state court renders its decision."

21  Id.  Finally, this Court must consider whether the state court's decision was "contrary to, or involved

22  an unreasonable application of, clearly established Federal law."  Id. at 72 (quoting 28 U.S.C. §

23  2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

24  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or

25  if the state court decides a case differently than [the] Court has on a set of materially

26  indistinguishable facts."  Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.  "Under the

27  'unreasonable application clause,' a federal habeas court may grant the writ if the state court

28  identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

1   that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.  "[A] federal court may

2   not issue the writ simply because the court concludes in its independent judgment that the relevant

3   state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

4   application must also be unreasonable." <u>Id.</u> at 411.  A federal habeas court making the

5   "unreasonable application" inquiry should ask whether the State court's application of clearly

6   established federal law was "objectively unreasonable." <u>Id.</u> at 409.

7        Petitioner bears the burden of establishing that the state court's decision is contrary to or

8   involved an unreasonable application of United States Supreme Court precedent.  <u>Baylor v. Estelle</u>,

9   94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

10  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

11  decision is objectively unreasonable.  <u>Clark v. Murphy</u>, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While

12  *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents

13  need be reasonably applied, we may look for guidance to circuit precedents"); <u>Duhaime v.</u>

14  <u>Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir. 1999) ("[B]ecause of the 1996 AEDPA amendments, it

15  can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit

16  precedent on a federal Constitutional issue. . . .  This does not mean that Ninth Circuit case law is

17  never relevant to a habeas case after AEDPA.  Our cases may be persuasive authority for purposes of

18  determining whether a particular state court decision is an 'unreasonable application' of Supreme

19  Court law, and also may help us determine what law is 'clearly established'").  Furthermore, AEDPA

20  requires that the Court give considerable deference to state court decisions.  The state court's factual

21  findings are presumed correct.  28 U.S.C. § 2254(e)(1).  A federal habeas court is bound by a state's

22  interpretation of its own laws.  <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir. 2002).

23        The initial step in applying AEDPA's standards is to "identify the state court decision that is

24  appropriate for our review." <u>Barker v. Fleming</u>, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more

25  than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last

26  reasoned decision.  <u>Id.</u> (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991) for the presumption

27  that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same

28  ground as the prior order).  Thus, a federal habeas court looks through ambiguous or unexplained

1   state court decisions to the last reasoned decision to determine whether that decision was contrary to

2   or an unreasonable application of clearly established federal law.  Bailey v. Rae, 339 F.3d 1107,

3   1112-13 (9th Cir. 2003).

4         In the instant petition, Petitioner raises two grounds for relief.  Petitioner raised Ground One

5   through direct appeal to the California Court of Appeal, which affirmed the judgment in a reasoned

6   opinion.  See Answer, Exh. 1.  Petitioner's claim was then raised in a petition for review to the

7   California Supreme Court, which summarily denied review.  See Resp't Lodged 7.  The California

8   Supreme Court, by its "silent order" denying review is presumed to have denied the claim for the

9   same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803

10  (1991).  Therefore, with regards to Ground One, the Court "look[s] through" this decision to the last

11  reasoned decision, in this case, that of the California Court of Appeal, and analyzes whether the state

12  court's decision was an objectively unreasonable application of federal law.  See Nunnemaker, 501

13  U.S. at 803-804.

14        Petitioner raised Ground Two through a petition for writ of habeas corpus with the California

15  Supreme Court.  See Resp't Lodged Doc. 7.  The California Supreme Court summarily denied the

16  petition, which amounts to a decision on the merits.  See Macias (Jesus Jose) on Habeas Corpus,

17  No. F173171 (Cal. October 14, 2009); Harrington v. Richter, 562 U.S. ——, 131 S.Ct. 770, 785, 178

18  L.Ed.2d 624 (2011) ("Harrington") (holding that 28 U.S.C. § 2254(d) does not require a state court

19  to give reasons before its decision can be deemed to have been adjudicated on the merits).  However,

20  because there is no reasoned decision from the state courts directly on point, this Court conducts its

21  own "independent review" of the record to determine if the state courts' denial of this claim was

22  contrary to, or an unreasonable application of, clearly established federal law.  See Musladin v.

23  Lamarque, 555 F.3d 830, 835 (9th Cir. 2009); see also Delgado v. Lewis, 223 F.3d 976, 981–82 (9th

24  Cir. 2000), (overruled on other grounds, Lockyer v. Andrande, 538 U.S. 63 (2003)).  As long as

25  "'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief is

26  precluded. Harrington, supra, 131 S.Ct. 786.  "[A]lthough we independently review the record, we

27  still defer to the state court's ultimate decision." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.

28  2002).

1    **III.    Review of Petitioner's Claims**

2        Petitioner's Ground One asserts that the admission of Petitioner' prior conviction for

3    unlawful sexual intercourse with an incompetent person violated his rights to due process and a fair

4    trial.  See Petition (Doc. 1) at 5.  Petitioner's Ground Two involves the presentence interview

5    ordered by the trial court prior to sentencing.  See Supplemental Petition, (Doc. 5), Attachment A, B,

6    and C.  Petitioner claims that the probation officer conducting the interview failed to advise him of a

7    right to counsel and ignored his requests for counsel in violation of his rights afforded under United

8    States Constitution's Fifth and Sixth Amendments, respectively.  See Supplemental Petition (Doc.

9    5), Attachment A, B, and C.

10       **A.  Ground One:  Trial Court's admission of Petitioner's prior conviction**

11       Petitioner's first ground for relief contends that the trial court violated his rights to due

12   process and a fair trial when it admitted Petitioner's prior crime involving sexual intercourse with a

13   incompetent person.  See Petition at 5.  Petitioner contends the evidence was both improper

14   propensity evidence and highly prejudicial.  See Resp't Lodged Doc 1 at 19-20.  Though Petitioner

15   concedes that the United States Supreme Court has yet to find the admission of such evidence

16   violates concepts of due process, he asserts the high Court will likely do so in the future.  See Resp't

17   Lodged Doc 1 at 13-14.  In the last reasoned state court decision, the Court of Appeal for the Fifth

18   Appellate District addressed the claim as follows:

19       The court admitted into evidence, over [Petitioner's] objection, certified records from
         the Department of Corrections and Rehabilitation of the kind commonly called a
20       "969b packet" showing that [Petitioner] had suffered a conviction in 2000 of unlawful
         sexual intercourse with an incompetent person.  The court ruled the challenged
21       evidence was admissible under Evidence Code section 1108, [[FN4]] which provides: "In
         a criminal action in which the defendant is accused of a sexual offense, evidence of
22       the defendant's commission of another sexual offense or offenses is not made
         inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section
23       352."  (§ 1108, subd. (a).)

24           FN4.  All further statutory references are to the Evidence Code.

25       Section 1108 is an exception to the general rule, codified in section 1101, that
         uncharged misconduct is admissible only for the purpose of proving some fact other
26       than the defendant's disposition to commit criminal conduct.  [[FN5]] (*People v.*
         *Yovanov* (1999) 69 Cal.App.4th 392, 405.)  As indicated above, section 1108 allows
27       evidence of the defendants uncharged sex crimes to be introduced in a sex offense
         prosecution to demonstrate the defendants disposition to commit such crimes
28       [provided such uncharged crimes evidence is not inadmissible pursuant to section

352]. (*People v. Reliford* (2003) 29 Cal.4th 1007, 1009.)

> FN5.  Section 1101 provides in pertinent part: "(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.  [¶]  (b)  Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

> As [Petitioner] does not dispute, both the instant offenses and the uncharged act-[Petitioner's] 2000 rape of an incompetent person-constitute "sexual offense [s]" within the meaning of section 1108, subdivision (a). (§ 1108, subd. (d)(1).).  [Petitioner] argues, however, that evidence of the 2000 rape was inadmissible under section 352 because it "bore no relevance to the charged acts and was extraordinarily prejudicial to [his] defense."  We disagree.

See Resp't Lodged Doc 4 at 2-3.

Following an in depth discussion of the state's evidentiary rules, the Court of Appeals determined:  (1) that the prejudicial effect of the evidence did not clearly outweigh its probative value under Evidence Code 352; and (2)  that Petitioner's due process claim lacked merit.  See Resp't Lodged Doc 4 at 2-4.  The Court of Appeal stated:

> [Petitioner] contends that the uncharged act and the instant offenses were highly dissimilar because J.L. was a five-year-old child whereas the victim of [Petitioner's] 2000 rape was an adult, and therefore the uncharged act evidence was "totally irrelevant."  We disagree.  As indicated above, the adult victim of [Petitioner's] uncharged offense had the mental capacity of an eight-to-ten-year-old person.  Thus that offense, like the instant offenses, was a sex crime committed against a vulnerable victim who lacked the capacity to consent and had a reduced capacity to resist.  Accordingly, we conclude that the challenged evidence was highly relevant.

> Moreover, the evidence was highly material because it tended to show [Petitioner] molested J.L., and therefore went to the central issue in the case.  Finally, the evidence of the uncharged act had a fairly high degree of necessity, because the value of [Petitioner's] admissions was called into question by [Petitioner's] subsequent denial of all culpability, and the prosecution case depended in no small part, ultimately, on the statements of a five-year-old child to his mother.

> [Petitioner] also argues that the admission of that evidence violated his due process rights.  There is no merit to this contention.  Where, as here, evidence of prior uncharged sexual offenses is admitted pursuant to section 1108 and the evidence is not made inadmissible pursuant to section 352, the admission of such evidence does not violate the defendants due process rights. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 916-917.)  [Petitioner] concedes that under *Auto Equity Sales v. Superior Court*

(1962) 57 Cal.2d 450, 455 we are bound to follow *Falsetta*, and raises this claim only to preserve the issue for federal review.

See Resp't Lodged Doc 4 at 2-3.

"[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Marshall v. Lonberger, 459 U.S. 422, 438 n. 6, (1983)).  In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in Federal Constitution."  Burgett v. Texas, 389 U.S. 109, 113–14. (1967).  The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.  Estelle, 502 U.S. at 72.

In the instant case, Petitioner's claim is foreclosed by the Ninth Circuit's decision in Mejia v. Garcia, 534 F.3d 1036 (9th Cir. 2008), cert. denied, 129 S.Ct. 141 (2009), rejecting the contention that the admission of evidence under California Evidence Code § 1108 was an unreasonable application of Supreme Court precedent.  The Ninth Circuit explained:

> Our holding in United States v. LeMay, 260 F.3d 1018 (9th Cir. 2001), supports our conclusion that admission of the propensity evidence did not violate Mejia's due process rights.  In LeMay, on direct appeal rather than collateral review, we upheld introduction of evidence under Federal Rule of Evidence 414—which is roughly analogous to California Evidence Rule 1108, allowing former acts evidence with respect to allegations of child molestation—as being consistent with due process requirements.  Id. at 1022.  We noted that the Rule 414 evidence must pass the requirements of Rules 402 and 403, id. at 1026–27, the federal analogs to California Evidence Rule 352 under which Norma's testimony was admitted.  We reasoned that due process requires that admission of prejudicial evidence not render a trial fundamentally unfair, which Rule 402, ensuring relevance, and Rule 403, guarding against overly prejudicial evidence, together guarantee.  Id.  California Evidence Rule 352 establishes a similar threshold for the propensity evidence introduced at Mejia's trial, suggesting that under LeMay, Rule 352, like Federal Rules 402 and 403, safeguards due process and protected Mejia's trial from fundamental unfairness.

Id. at 1047, n. 5.

In the absence of intervening higher authority, e.g., a decision by the Supreme Court or the Ninth Circuit sitting en banc, this Court is bound by the decision in Mejia.  Accordingly, Petitioner is not entitled to relief under his first ground.

**B.      Ground Two:  Petitioner's right to counsel and the presentence interview**

Petitioner's Ground Two relates to the probation officer's presentence interview ordered by the trial court prior to imposing Petitioner's sentence.  <u>See</u> Supplemental Petition (Doc. 5), Attachment A, B, and C.  Petitioner contends that his Fifth and Sixth Amendment rights were violated because:  (1) prior to the interview, he was not advised of his right to counsel; and (2) the probation officer ignored his request for counsel.  <u>Id.</u> at Attachment B.  Petitioner asserts the resulting interview improperly produced his "induced statement" and "aggravating facts of the crime" which were then included in the probation officer's report provided to the judge at sentencing.  <u>Id.</u>  Though not entirely clear, Petitioner appears to argue that the trial court's consideration of this report negatively effected his sentencing.[6]  <u>Id.</u>  Following this Court's independent review of the record, it is clear that the state court's decision rejecting Petitioner's claim was not objectively unreasonable.  <u>Harrington</u>, <u>supra</u>, 131 S.Ct. 786.

Under the Sixth and Fourteenth Amendments a defendant in a state court criminal proceeding has an absolute right to be represented by counsel.  <u>Faretta v. California</u>, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963); <u>Jackson v. Ylst</u>, 921 F.2d 882, 888 (9th Cir. 1990).  The Sixth Amendment right to counsel applies not only to the trial itself, but to all critical stages of a criminal prosecution after the initiation of adversarial judicial proceedings.  <u>See</u>, <u>e.g.</u>, <u>Brewer v. Williams</u>, 430 U.S. 387, 401 (1977); <u>United States v. McNeil</u>, 362 F.3d 570, 572 (9th Cir. 2004).  If a defendant was entitled to counsel at trial, the failure to provide counsel results in automatic reversal of a conviction.  <u>Gideon</u>, 372 U.S. at 339.

However, the Sixth Amendment right to counsel guarantees a defendant assistance of counsel only when confronted by "prosecutorial forces."  Therefore, a defendant is only guaranteed counsel during adversarial and critical stages of the proceedings.  <u>United States v. Johnson</u>, 935 F.2d 47, 50 (4th Cir.1991); <u>United States v. Benlian</u>, 63 F.3d 824, 827 (9th Cir. 1995).  The Ninth Circuit has

---

[6]Petitioner's contention that statements reflected in the probation officer's report were "induced" is additionally unclear as the report reflects that during the presentence interview Petitioner generally restated his theory of defense previously offered through his own testimony at trial.  Both at trial and during the interview, Petitioner denied the charged allegations as well as his earlier admissions to his fiancé, the victim's mother, and NCIS investigators.  <u>Compare</u> Reporter's Transcript at 406-07; <u>with</u> Supplemental Petition (Doc. 5), Attachment E, "Probation Officer's Report" at 6.

held that, because the pre-sentence interview is not a "critical proceeding," defendants in non-capital cases do not have a constitutional right to counsel during the interview.  Baumann v. United States, 692 F.2d 565, 578 (9th Cir. 1982) ("Baumann"); see also United States v. Leonti, 326 F.3d 1111, 1119 (9th Cir. 2003) (distinguishing "the period of attempted cooperation from the 'presentence interview,' which we have held is not a critical stage." (citing Baumann)); but see United States v. Herrera–Figueroa, 918 F.2d 1430 (9th Cir. 1991) (declining to rule on whether pre-sentence interviews are a "critical stage" for Sixth Amendment purposes, but exercising the court's supervisory power to require probation officers permit defense attorneys to accompany federal defendants in all pre-sentence interviews) as recognized in Hoffman v. Arave, 236 F.3d 523, 540 (9th Cir. 2001)).  Accordingly, Petitioner's contentions regarding any Sixth Amendment violation lack merit.

Additionally, as Petitioner's presentence interview was not a critical stage entitling him to a Sixth Amendment right to counsel, it follows that the probation officer was not required to advise Petitioner of a right that does not exist.  See Baumann, supra, 692 F.2d at 577 (determining that Miranda warnings are not required before routine presentence interviews in non-capital cases[7]); cf. United States v. Gordon, 4 F.3d 1567, 1572 (10th Cir. 1993) ("Given that Defendant had no Sixth Amendment right to the presence or advice of counsel during the presentence interview, he cannot obtain relief for original counsel's failure to inform him of his Fifth Amendment right to refuse to answer the probation officer's presentence interview questions." (citing Wainwright v. Torna, 455 U.S. 586, 587–88 (1982)).  Furthermore, there is no United States Supreme Court authority implicating either Fifth or Sixth Amendment concerns when a non-capital defendant's presentence interview is completed without Miranda warnings or the assistance of counsel.  See 28 U.S.C. § 2254(d)(1); Carey v. Musladin, 549 U.S. 70, 76-77 (2006) ("[g]iven the lack of holdings from [the Supreme] Court regarding [petitioner's claim], it cannot be said that the state court unreasonably applied clearly established federal law"); Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004) ("[i]f no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas

---

[7]Under Miranda v. Arizona, 384 U.S. 436 (1966), the warnings include the right to have counsel present during custodial interrogation.

1  petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable

2  application clearly established federal law"), cert. denied, 543 U.S. 1037 (2004).

3        For these reasons, the Court finds that Petitioner is not entitled to habeas corpus relief on this

4  ground.

5  **IV.**     **Certificate of Appealability**

6        A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

7  district court's denial of his petition, and an appeal is only allowed in certain circumstances.  <u>Miller-</u>

8  <u>El v. Cockrell</u>, 537 U.S. 322, 336  (2003).  The controlling statute in determining whether to issue a

9  certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may

10  issue a certificate of appealability where "the applicant has made a substantial showing of the denial

11  of a constitutional right."  Where the court denies a habeas petition, the court may only issue a

12  certificate of appealability "if jurists of reason could disagree with the district court's resolution of

13  his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

14  encouragement to proceed further."  <u>Miller-El</u>, 537 U.S. at 326; <u>Slack v. McDaniel</u>, 529 U.S. 473,

15  484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate

16  "something more than the absence of frivolity or the existence of mere good faith on his . . . part."

17  <u>Miller-El</u>, 537 U.S. at 338.  In the present case, the Court finds that reasonable jurists would not find

18  the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable; thus

19  Petitioner's claim is not deserving of encouragement to proceed further.  Consequently, the Court

20  hereby denies a certificate of appealability.

21                                         **ORDER**

22        Accordingly, the Court ORDERS that:

23       1.      The petition for writ of habeas corpus is DENIED WITH PREJUDICE;

24       2.      The Clerk of the Court is DIRECTED to enter Judgment for Respondent; and

25       3.      A Certificate of Appealability is DENIED.

26     IT IS SO ORDERED.

27  **Dated:   September 8, 2011**               **/s/ Dennis L. Beck**
                                                 UNITED STATES MAGISTRATE JUDGE

28